FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS** 2016 MAR -7 PM 4: 10
**EL PASO DIVISION**

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                    DEPUTY

| | | |
|---|---|---|
| BERTHA DELGADO, | § | |
|     **Plaintiff,** | § | |
| v. | § | **NO. EP-13-CV-0070-DB** |
| | § | **(-LS by consent)** |
| **CAROLYN W. COLVIN,**[1] | § | |
| **Acting Commissioner of Social Security** | § | |
| **Administration,** | § | |
|     **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was referred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C of the Local Court Rules for the Western District of Texas.

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner) denying her applications for disability insurance benefits (DIB) and for supplemental security income (SSI) under Titles II and XVI, respectively, of the Social Security Act. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), she is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of §205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was thirty-six years old at the time of the administrative decision. (R: 18, 108)[2] She completed a high school education, attending special education classes, and can speak, read, and write English. (R: 27, 124, 126) She has experience working in factory, fast food, janitorial, and daycare positions. (R:144) Plaintiff discontinued working in March of 2010 because she was laid off. (R: 125)

## ISSUES

Plaintiff presents the following issues for review:

1. Whether the final decision of the Commissioner denying benefits is supported by substantial evidence; and

2. Whether the Commissioner applied an incorrect legal standard in determining that Plaintiff was not disabled.

In particular, Plaintiff contends that the Administrative Law Judge (ALJ) failed to consider whether she could maintain employment for a significant period of time given the limiting effects of her mental impairments. She further contends that she was prejudiced by the ALJ's failure to make a specific determination concerning her ability to maintain employment. Plaintiff contends that the case should be reversed, or in the alternative, remanded for further administrative proceedings.

## PROCEDURAL HISTORY

On June 9, 2010, Plaintiff filed applications for DIB and SSI benefits with an alleged onset date of March 20, 2010 due to learning disabilities, asthma, and back pain. (R:11, 125, 173) Her applications were denied initially and on reconsideration. (R:11) A hearing was held on August 22,

---

[2]Reference to the Administrative Record, contained in Docket Entry Number 13, is designated by an "R" followed by the page number(s).

2011. (R:25) The ALJ issued his decision on December 1, 2011, finding Plaintiff not disabled and denying benefits. (R:11-18) The Appeals Council denied Plaintiff's request for review. (R:1-4)

Plaintiff filed the instant cause on March 11, 2013. [ECF Nos. 1, 5] Defendant filed an answer on March 16, 2013 and a transcript of the administrative proceedings on May 20, 2013. [ECF Nos. 10, 13] Plaintiff filed a brief in support of her claims on July 19, 2013. [ECF No. 24] On August 6, 2013, Defendant filed a brief in support of the Commissioner's decision denying benefits. [ECF No. 25] This case was transferred to United States Magistrate Judge Leon Schydlower on December 8, 2015. [ECF No. 26]

## DISCUSSION

### I. STANDARD OF REVIEW

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence "is more than a mere scintilla, and less than a preponderance." *Masterson*, 309 F.3d at 272. The Commissioner's findings will be upheld if supported by substantial evidence. *Id.* A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id.*; *Spellman v. Shalala*, 1 F.3d

357, 360 (5th Cir. 1993).

## II. EVALUATION PROCESS

The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920.

The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the claimant can perform her past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520, 416.920. However, if the claimant has shown she cannot perform her previous work, the burden shifts to the Commissioner to show that there is other work available that the claimant can perform. *Crowley v. Apfel*, 197 F.3d. 194, 198 (5th Cir. 1999). If the Commissioner establishes other potential employment, the burden shifts back to the claimant to prove she is unable to perform the alternative work. *Id.*

A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis. *Leggett*, 67 F.3d at 564. The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commission made an error of law. *Id.*

## III. THE ALJ'S DECISION

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in

4

substantial gainful activity since March 20, 2010, the alleged onset date. At step two, the ALJ found

that Plaintiff had a severe impairment in the form of mild mental retardation. At step three, he

determined that Plaintiff had no impairment that met or equaled the listing of impairments in 20

C.F.R. Part 404, Subpt. P, Appendix 1. In considering the severity of Plaintiff's mental impairment,

the ALJ found that she had a mild restriction of daily living activities, moderate difficulties in social

functioning and in "concentration, persistence, or pace," and no episodes of decompensation of

extended duration.

After considering the entire record concerning Plaintiff's physical and mental limitations, the

ALJ determined that Plaintiff retained the functional capacity to perform a full range of work at all

exertional levels. He found that she was "maximally able" to understand, remember, and carry out

simple instructions, make simple decisions, attend and concentrate for extended periods, interact

with others, accept instructions, and respond to changes in a routine work setting. After considering

the record, the ALJ found that Plaintiff could perform simple unskilled work on a regular and

continuing basis.

At step four, the ALJ determined that Plaintiff was able to perform her past relevant work

as a hand packager. Consequently, he determined that Plaintiff was not disabled from her alleged

onset date through the date of the decision. (R:11-18)

## IV. MAINTAINING EMPLOYMENT

Plaintiff asserts that the ALJ erred in failing to consider whether Plaintiff could maintain for

a significant period of time any employment she might obtain. Additionally, Plaintiff claims that she

was prejudiced by the ALJ's failure to make a specific finding regarding her ability to maintain

employment. She argues that because of her mild mental retardation, her problems with memory,

concentration, understanding and following instructions, her need for constant supervision, her low IQ score of 63,[3] and her Global Assessment of Functioning (GAF) scores of 50 and 55,[4] she is unable to maintain employment on a sustained basis. Her past work history, she argues, further demonstrates her inability to maintain work for a significant period of time. Plaintiff contends that had the ALJ found she could not maintain employment, a disability finding would have been warranted.

Defendant responds that the ALJ was not required to make a specific finding regarding the ability to maintain employment because Plaintiff has failed to show that her condition has "waxed or waned," or that her mental functioning would prevent her from performing and sustaining her past relevant work. Moreover, Defendant asserts that the GAF scores are not alone determinative of a residual functional capacity ("RFC") assessment or disability determination.

In making an RFC assessment, the ALJ evaluates the nature and extent of the individual's limitations and determines the individual's RFC for work activity "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(b),(c), 416.945(b),(c); *see also* Social Security Ruling (SSR) 96-8p. The ALJ need not make a specific finding regarding an individual's ability to maintain work activity in every case. *See Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) (on petition for rehearing). Instead, the ALJ is required to make a specific finding on the ability to maintain employment only where the individual's impairment "waxes and wanes in its manifestations of disabling symptoms."

---

[3]Social Security Ruling 85-16 provides in pertinent part that: an individual, in whom the only finding in intellectual testing is an IQ between 60 and 69, is ordinarily expected to be able to understand simple oral instructions and to be able to carry out these instructions under somewhat closer supervision than required of an individual with a higher IQ.

[4]*See* American Psychiatric Ass'n, DIAGNOSTIC and STATISTICAL MANUAL of MENTAL DISORDERS IV-TR, p. 34 (4th ed. 2000)(GAF rating within the range of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning; a rating within the range of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning).

*See id.* Absent evidence that the claimant's ability to maintain employment would be compromised, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC, the ALJ is not required to make a specific finding that the claimant can maintain employment. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). "Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." *Frank*, 326 F.3d at 619.

In this case, Plaintiff has failed to present evidence that her mental condition waxes and wanes such that her ability to maintain employment would be compromised. Nor has Plaintiff demonstrated that she could only work temporarily at a given level of work, and could not sustain work at that level. Moreover, she has not shown that the ALJ failed to appreciate that an ability to work on a regular and continuing basis is inherent in the RFC determination. In fact, the ALJ expressly found that Plaintiff was "able to perform simple unskilled work on a regular and continuing basis." (R:17) He also recognized that an individual's RFC is the ability to do physical and mental work activities on a "sustained basis" despite limitations from impairments, citing to 20 C.F.R. §§ 404.1545, 416.945, and Social Security Ruling 96-8p. (R:12) Therefore, the ALJ did not err in failing to make a specific finding as to whether Plaintiff could maintain any employment she might obtain.

In addition, the ALJ's RFC determination is supported by substantial evidence. Review of the medical evidence of record shows that a consultative psychological examination of Plaintiff was conducted by Dr. Guido Barrientos on August 1, 2003. (R:194-97) He found her Full Scale and Performance IQ's to be 68 and 74, respectively. He diagnosed her as having "mild mental

retardation," as well as an anxiety disorder, and depression. He opined that she would "do best with unskilled or simple service occupations."

Seven years later, on July 8, 2010, Dr. Barrientos conducted another consultative psychological examination (R:201-04) He reported that Plaintiff's "cognitive functions appeared grossly intact and she was alert and responsive to her surroundings. No gross deficits or speech or memory were noted. Attention and concentration appeared somewhat limited, as she would give up quickly on challenging items." (R:202) Intelligence testing results indicated a Full Scale IQ of 63, "suggestive of mild mental retardation." (R:203) Her sub-test scores indicated that she could be considered functioning at a lower than expected level in terms of academic skills. However, because there was no significant discrepancy between her academic scores and her Full Scale IQ score, Dr. Barrientos found that there did not appear to be a learning disorder. Concerning her adaptive behavior, Plaintiff reported to Dr. Barrientos that she could prepare food, perform household chores, shop, handle money, and care for herself. She could relate to others appropriately, has friends, can go out by herself, and can speak and communicate effectively. She further reported that she could follow simple instructions and carry out simple tasks, but stated she could not work. She could drive and take a bus. (R:203) Dr. Barrientos assessed her with mild mental retardation and reported her GAF score as 55. (R:204)

On August 29, 2010, Dr. Jorge Guzman completed a Treating Physician Mental Functional Assessment Questionnaire. (R:223) He reported that he was treating Plaintiff for a mental condition, but that her condition did not impose more than minimal limitations. Medical records reflect that Dr. Guzman assessed Plaintiff with a moderate depressive disorder. (R:198-200)

The record contains two Mental Residual Functional Capacity Assessments. The first one

was completed on August 3, 2010 by Dr. Sarah Jackson. The second one was completed on September 21. 2010 by Dr. Richard Campa. Both Drs. Jackson and Campa concluded that Plaintiff could understand, remember, and carry out simple instructions, make simple decisions, and attend and concentrate for extended periods. They both further concluded that she could interact adequately with co-workers and supervisors and respond appropriately to changes in routine work settings. (R:221, 240)

On January 4, 2011, Dr. Guzman completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (R:243-44) He found Plaintiff to be markedly limited in the ability to understand and remember detailed instructions, and extremely limited in the ability to carry out detailed instructions. However, he found her only moderately limited with respect to understanding and remembering short, simple instructions, and only slightly limited in being able to carry out short, simple instructions. He further assessed her as markedly affected in the ability to respond appropriately to work pressures and changes in a usual work setting, and moderately affected in interacting appropriately with the public, co-workers, and supervisors. He concluded that she was unable to maintain employment due to her difficulty in learning detailed tasks.

On October 20, 2011, Dr. Barbara Felkins, a medical expert, responded to medical interrogatories (R:248-52), and completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (R:253-55) Based upon her review of the record, she found evidence of mild mental retardation, borderline intellectual functioning, and mild anxiety. She opined that Plaintiff's Full Scale IQ score was 68, but that she was functioning closer to an IQ of 74 or borderline intellectual functioning. She noted that Plaintiff drove to the consultative exam, was able to complete her own functioning reports, and has worked simple jobs for several years. She further

9

noted that although notations of mild depression and mild anxiety were entered in 2003 by Dr. Barrientos, there was no such diagnosis noted in his 2010 examination report. Dr. Felkin concluded Plaintiff had "only mild psychological symptoms." In her medical source statement, she found no limitations in Plaintiff's ability to understand, remember, and carry out simple instructions, and make judgments on simple work-related decisions. She determined that Plaintiff was moderately, or "satisfactorily," able to interact appropriately with the public, co-workers, and supervisors, and similarly able to respond appropriately to work situations and changes in routine work settings.

The record also contains a Report of Psychological Examination by Dr. Barrientos conducted on January 30, 2012, subsequent to the ALJ's decision, and which was submitted to the Appeals Council. (R:257-58) Therein, Dr. Barrientos found Plaintiff's Full Scale IQ to be 63, within the range of mild mental retardation. He rated her GAF score at 50.

Review of the ALJ's decision shows that he considered Plaintiff's mild mental retardation, low IQ, GAF scores, and other medical evidence of record in making his RFC determination. However, he found that her mental conditions did not compromise her ability to work. Despite Plaintiff's limitations, the ALJ determined that she was able to follow simple instructions, could communicate and interact appropriately with the public, coworkers, and supervisors, and could engage in activities of daily living. He noted that she could drive, was able to engage in activities of daily living, and go out alone. In reviewing the medical evidence, he gave great weight to Dr. Barrientos' 2010 opinion, as it was based on observations of Plaintiff and supported by the record. He also gave great weight to Dr. Guzman's opinion that Plaintiff was unable to carry out detailed tasks, as such was supported by the record. The ALJ afforded great weight to the opinion assessment of Dr. Campa, who with Dr. Jackson concluded that Plaintiff could perform simple work. Finally,

the ALJ afforded great weight to the opinion of Dr. Felkins, which was based upon her review of the entire record and supported by the other examiners' opinions.

In sum, it is apparent from the ALJ's decision that he considered the entire record and evaluated the evidence. He considered any functional limitations attributed to Plaintiff's conditions by the physicians, and incorporated such limitations into his RFC determination. Despite Dr. Barrientos' assessments of GAF scores of 50 and 55, he nonetheless reported that Plaintiff could follow and carry out simple instructions, could communicate effectively, and could relate to others appropriately. It is within the ALJ's province to resolve conflicts in the evidence, such as when a treating physician's assigned GAF score conflicts with the same physician's description of the individual's mental symptoms or functioning. *See Jackson v. Colvin*, No. 4:14-CV-756-A, 2015 WL 7681262 at *3 (N.D. Tex. Nov. 5, 2015) (citation omitted) (adopted by District Court, 2015 WL 7582339 (N.D. Tex. Nov. 25, 2015)). Thus, the evidence fails to show that the limiting effects of Plaintiff's impairments are greater than those assessed by the ALJ in his RFC determination.

In making his determinations, the ALJ assessed Plaintiff's credibility and subjective complaints. It was within the ALJ's broad discretion to weigh the evidence and make credibility determinations. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). The ALJ considered the medical evidence as well as Plaintiff's testimony. Based upon his review of the evidence, the ALJ determined that Plaintiff was not as limited as she claimed. Such decision was within the ALJ's discretion and is supported by the evidence.

Accordingly, based upon a review of the record evidence, the Court finds that the ALJ's disability determination comports with relevant legal standards and is supported by substantial evidence. Therefore, Plaintiff's assertions of error are without merit.

11

## CONCLUSION

Based on the foregoing, the Court hereby ORDERS that the decision of the Commissioner be AFFIRMED consistent with this opinion.


SIGNED and ENTERED on March 7, 2016.


LEON SCHYDLOWER
United States Magistrate Judge